## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS
## WESTERN DIVISION

---

**UNITED STATES OF AMERICA**

**vs.**                                             **Case Number:**        2:25-cr-20279-TLP-1

**DEMARUS SMITH,**
**Defendant.**

---

## MOTION TO SUPPRESS EVIDENCE

## AND INCORPORATED MEMORANDUM IN SUPPORT

---

**COMES NOW** the Defendant, Demarus Smith, by and through his counsel of Record, Charles E Waldman, and respectfully moves this Honorable Court to suppress all evidence obtained as a result of an unlawful traffic stop conducted by a Tennessee State Trooper in violation of Defendant's rights under the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Constitution of the State of Tennessee.

Defendant would show the stop in question was premised on an alleged violation of TCA § 55-8-128 (Failure to Yield from Entering an Intersection). As set forth below, the Defendant committed no such violation; the officer lacked either probable cause or reasonable suspicion to

1

effect the stop; and the seizure was therefore unconstitutional at its inception. All evidence flowing from the stop must be suppressed as fruit of the poisonous tree.

## FACTUAL BACKGROUND

1. The precipitating incident in this matter took place at approximately 3:30 pm on October 1, 2025, in Memphis, Tennessee. (See Affidavit of Complaint ("Affidavit"), attached as Exhibit 1 hereto).

2. Tennessee State Trooper Bradley Atkinson was stopped at the red light at the intersection of McLean Boulevard and Chelsea Avenue, headed north. His car was third in line at the stop, behind what appears to be an unmarked black police SUV and a small gray civilian sedan. (Atkinson Dash-Cam Video)

3. Defendant DeMarus Smith, driving a gray Buick Lacrosse, was on the opposite side of the intersection, headed south on McLean. At the red light, he was first in line in the left turn lane, preparing to turn east onto Chelsea Avenue. (Dash-Cam Video)

4. Dash-cam video suggests Trooper Atkinson was blocked from a clear view of Defendant's vehicle at the light by the two vehicles ahead of him.

5. As the light turned green, Defendant moved into the intersection and executed his left turn. (Dash-Cam Video)

6. Trooper Atkinson alleged Defendant violated TCA § 55-8-128 in that he failed to yield to oncoming traffic when making his turn. (Affidavit)

7. No opposing vehicle was moving forward at the time of Defendant's maneuver, however. (Dash-Cam Video)

8.   Trooper Atkinson further alleges Defendant's windows were "dark-tinted." (Affidavit)

9.   Though at a significant distance from Defendant's moving vehicle when making this assessment, Atkinson followed Defendant on to Chelsea Avenue, turned on his lights, and initiated the stop. (Dash-Cam Video)

10.   Trooper Atkinson's body-worn camera is visually operational throughout the stop. The audio, however, appears never to have been turned on[1]. (Atkinson Body-Cam Video)

11.   The trooper affixes a tint meter to the vehicle's passenger-side window. Absent audio confirmation, the meter's reading is unclear.[2]

12.   On request, Defendant provided valid Tennessee identification, current vehicle registration, and proof of insurance to the officer. Defendant did not consent to search of his vehicle.

13.   Defendant complied with Trooper Atkinson's request that he exit his vehicle. For the duration of the stop, Defendant remained outside his vehicle, standing on the sidewalk, surrounded by other unidentified police and/or Memphis Safe Task Force personnel participating in the stop. (Body-Cam Video)

14.   Trooper Atkinson alleged that on approaching Defendant's vehicle he "detected a strong odor of marijuana emanating from it." (Affidavit)

15.   Defendant contends he does not smoke marijuana.

16.   Trooper Atkinson begins a "probable cause search" of the vehicle compartment. No obvious contraband is plainly visible. Atkinson opens the center console and uncovers a

---

1   Defendant asserts the evidentiary value of the video is thus compromised.
2   Approximately 26 minutes into the stop, the video appears to show Trooper Atkinson attached the meter to the vehicle a second time, to the driver's side window, taking photographs of the resulting reading. (Defendant notes copies of these photographs were not included in discovery provided to him by the Government).

3

mason jar purportedly containing cocaine, along with a prescription pill bottle with a number of pills, and a small scale, together wrapped in a plastic bag. A Glock 357 and 30-round clip are found hidden between the driver's seat and the console. (Body-Cam Video)

17. At this point, Defendant is arrested, and cuffed. (Body-Cam Video)

18. Trooper Atkinson next returns to his vehicle and releases a canine from the back seat. He leashes the dog, and walks him once around Defendant's Buick. The dog stands to peer into both the driver and front passenger windows, respectively, and sits briefly. It is unclear, without audio or other additional information, what the dog's "alert" posture customarily may be. (Body-Cam Video)

19. Defendant would show the leftover remnants of an earlier meal were in a styrofoam container on the floor of the vehicle's back seat.

20. Trooper Atkinson charges Defendant Smith with failure to yield from entering an intersection; window tint violation; simple possession of a Schedule VI substance (marijuana); possession of a Schedule I controlled substance with intent to sell, manufacture or deliver (cocaine); possession of a Schedule I controlled substance with intent to sell, manufacture or deliver (MDMA (Ecstasy)); unlawful carrying or possession of a weapon; and possession of drug paraphernalia. (Affidavit)

21. The case is subsequently taken up by the US District Court, where Defendant is initially indicted on one count of possession of a firearm, in violation of 18 USC § 922(g)(1). A later, superseding indictment adds counts of possession of methamphetamine, in violation of 21 USC § 841(a)(1), and of use of a firearm in relation to a drug trafficking crime, in violation of 18 USC § 924(c)(1)(A).

4

**ARGUMENT**

**A.**     **The Stop Was Unlawful**

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Constitution of the State of Tennessee prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.

A traffic stop constitutes a seizure under the Fourth Amendment and must be supported by probable cause or reasonable suspicion of a traffic violation. *See Delaware v. Prouse,* 440 U.S. 648, 662-63, 1979. To justify a warrantless seizure, the government must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio,* 392 U.S. 1 (1968) Absent such justification, the stop is unreasonable and unconstitutional.

In this case, TCA § 55-8-128 provides specifically and in pertinent part:

> a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway or drive. (b) When two (2) vehicles enter an intersection from different highways or drives at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

5

Memphis municipal data suggests Chelsea Avenue is a 4-lane arterial road with a total curb-to-curb width of approximately 48 to 50 feet in the vicinity of McLean Boulevard, featuring two travel lanes in each direction, without a center median. Trooper Atkinson's dash-cam video shows at the moment of the turn Defendant operated well within the requirements of the statute. It is clear that none of the three vehicles northbound on McLean—neither the black SUV, the gray sedan, nor Trooper Atkinson's cruiser—had yet moved forward into the intersection as Defendant completed his turn. In fact, it is apparent Defendant was through the turn and well down Chelsea Avenue before the lead car on Trooper Atkinson's side of McLean, the black SUV, had straightened out and passed over the crosswalk into the intersection. Defendant asserts his turn was safe, and no other driver in the vicinity at the time was endangered in any way by his action.

## B.    <u>Window Tint: A Brief Observation</u>

It is evident from the dash-cam video Trooper Atkinson could not see the windows of Defendant's vehicle until Defendant was nearly through his left turn. Third in his group on McLean, Trooper Atkinson was, at that point, an estimated 50 to 60 feet, if not further, from Defendant's moving vehicle as he makes his assessment of the window tint. He nonetheless follows Defendant on to Chelsea Avenue, turns on his lights, and initiates the stop. Defendant would show such a "brief observation" has been found insufficient to establish probable cause to stop a vehicle for dark tint, where specific articulable facts are required. *See United States v. Page* 154 F. Supp. 2d 1316 (M.D. Tenn. 2001)

6

C.    **A Strong Odor of Marijuana**

A traffic stop for a minor infraction does not automatically give police the right to search a vehicle without permission. In *Knowles v. Iowa*, the United States Supreme Court emphasized that the warrantless search incident to arrest is triggered only by a lawful custodial arrest. Mere probable cause to arrest is not sufficient to justify the search. *See Knowles v. Iowa* 525 U.S. 113 (1998)  Here, Defendant asserts the purported presence of an "odor of marijuana" in the vehicle —however strong—does not justify a warrantless search when the actual substance giving rise to the odor cannot be identified. Such justification on the part of law enforcement has recently been complicated by holdings in *State of Tennessee v. Andre Jujuan Lee Green* (Supreme Court of Tennessee, 2024), raising questions regarding accurate differentiation between marijuana and hemp, when their odor is the same.

**CONCLUSION**

Trooper Atkinson initiated the incident stop under TCA § 55-8-128—which statute requires actual or affected traffic to take effect. As video evidence refutes the allegation that Defendant's turn was improper, Atkinson lacked probable cause or reasonable suspicion Defendant Smith violated the statute. Further, upon being stopped, Defendant declined permission for search of his vehicle. Under *Whren v. United States* (517 U.S. 806 (1996), once the alleged violation collapses, a stop becomes an unreasonable seizure, unconstitutional at its inception.

Because the stop was unlawful, all evidence obtained as a result—including observations, statements, field tests, searches, and any derivative evidence—must be suppressed under the fruit of the poisonous tree doctrine. *See Wong Sun v. United States* 371 U.S. 471 (1963), also *State v. Daniel*, 12 S.W.3d 420 (Tenn. 2000).

**WHEREFORE**, the Defendant respectfully requests that this Court:

1.    Grant his Motion to Suppress;

2.    Suppress all evidence obtained as a result of the unlawful stop; and

3.    Grant all such further relief as justice requires.

Respectfully submitted,

s/ Charles E. Waldman_____

Charles E. Waldman (BPR 14682)
Counsel for Defendant

Waldman Law PC
250 Poplar Avenue
Memphis, Tennessee 38103
Phone:   (901) 521-9956
Fax:       (901) 205-0488
E-Mail:   cwesq@aim.com

8

**Exhibit 1**

**Affidavit of Complaint**

## AFFIDAVIT OF COMPLAINT

**STATE OF TENNESSEE**
**COUNTY of SHELBY**

Personally appeared before me **Trp. Bradley Atkinson** and made oath that on or about the October 1, 2025 day of **October**, 2025, in said County, and within the jurisdiction of the Criminal Court of Shelby County, Tennessee, one **Demarus Arnez Smith** age **44,** sex **Male,** whose last known address is 3681 Townes AVE Memphis, TN 38122, did unlawfully commit the offense(s) of **TCA 55-9-107 Window Tint Violation, TCA 55-8-128 Failure to Yield from entering a Intersection, 39-17-418 Simple Possession Schedule VI "Marijuana" TCA 39-17-417 Possession with Intent Schedule II with intent to resale/manufacture/deliver Cocaine, TCA 39-17-417 Possession with intent Schedule I with intent to resale/manufacture/deliver MDMA (Ecstasy), TCA 39-17-1307 Unlawful Carrying or possessing of a weapon TCA 39-17-425Possession Drug Paraphernalia** and the essential facts constituting said offense(s) and the source of the affiant's information are as follows:

Pursuant T.C.A 40-6-204 (b) advised that if your charge(s) are dismissed, a no true bill is returned by a grand jury, you are arrested and released without being charged with an offense, or the court enters a nolle prosequi in your case, you are entitled, upon petition by you to the court having jurisdiction over the action, to the removal and destruction of all public records relating to the case without cost to you.

**Narrative: .** On October 1, 2025, at approximately 3:23 PM, I observed a gray Buick bearing tag # BLJ 2058 making a left turn onto Chelsea Avenue and pulling out in front of several vehicles, failing to yield the right of way at the intersection. The vehicle had dark-tinted windows. I stopped the vehicle, and as I was approaching, I detected a strong odor of marijuana emanating from it. I asked the driver for his driver's license and vehicle paperwork. The driver was identified as Mr. Demarus Arnez Smith. I had Mr. Smith exit his vehicle and come to the rear, which he was slow to do, but complied after being advised to do so.
During a probable cause search of Mr. Smith's vehicle, I found a glass mason jar containing 6.8 grams of cocaine, 4.8 grams of marijuana, a pill bottle with a plastic baggie holding 55 ecstasy pills, and 114 loose ecstasy pills in a plastic bag inside the console and digital scales. I also located a Glock 357 with a 30-round clip setting between the driver's seat and console. Mr. Smith was charged with possession of a Schedule II substance with intent to resell, manufacture, or deliver, along with simple possession of Schedule VI marijuana, possession with intent to sell, manufacture, or deliver Schedule I ecstasy, unlawful carrying and possession of a weapon, window tint violation, drug paraphernalia, and failure to yield the right of way at an intersection. Mr. Smith had previously been convicted in July 2017 of unlawful transport of a firearm and was convicted of a felony. He was transported to the Memphis Criminal Justice Complex.

All these offenses occurred in Shelby County.

_____
Affiant
**6348 Summer Ave,**
**Memphis, TN 38134**
Address

Sworn to and subscribed before me this ___1ST___ day of OCT 2025.

BOOKING NO. __25114396__

_____
General Sessions/ Judge/Judicial Commissioner.

of Shelby County, Tennessee

**STATE OF TENNESSEE**
**COUNTY of SHELBY**

**ARREST WARRANT**

**TO ANY LAWFUL OFFICER OF THE STATE:**

INFORMATION ON OATH having been made that the offense(s) of **TCA 55-9-107 Window Tint Violation, TCA 55-8-128 Failure to Yield from entering a Intersection, 39-17-418 Simple Possession Schedule VI "Marijuana" TCA 39-17-417 Possession with Intent Schedule II with intent to resale/manufacture/deliver Cocaine, TCA 39-17-417 Possession with intent Schedule I with intent to resale/manufacture/deliver MDMA (Ecstasy), TCA 39-17-1307 Unlawful Carrying or possessing of a weapon TCA 39-17-425Possession Drug Paraphernalia** has been committed, and accusing **Demarus Arnez Smith,** therefore. YOU ARE HEREBY commanded in the of the State, for worth, to arrest the above-named person and bring said person before me or some other Judge of the Court of General Sessions.

Issued this __1ST__ day of Oct. 2025.

General Sessions/ Judge/Judicial Commissioner,
of Shelby County, Tennessee

**CERTIFICATE OF SERVICE**

I, Charles E. Waldman, do hereby certify that a true and correct copy of the foregoing Motion has been sent via US Mail and/or the Court's ECF system this 9th day of March 2026 to:


Mr. Patrick Neal Oldham
Assistant United States Attorney
Office of the United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee  38103
Telephone     901-544-4231
E-Mail        neal.oldham@usdoj.gov


s/ Charles E. Waldman_____

Charles E. Waldman (BPR 14682)

10